UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KENTUCKY LABORERS' DISTRICT COUNCIL HEALTH & WELFARE FUND, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:25-cv-00046-GFVT |
| v. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| THALLE CONSTRUCTION CO., INC., | ) ) ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Thalle Construction Co., Inc.'s motion to dismiss. [R. 13]. For the following reasons, the Court **DENIES** the Defendant's motion.

**I**

Plaintiffs Kentucky Laborers' District Council Health and Welfare Fund and Laborers' National Pension Fund bring a two-count complaint against Thalle Construction on theories related to the alleged breach of the parties' project agreement and the support of a funding rehabilitation plan. [R. 1 at 1–2, 9]. On March 1, 2022, Thalle Construction entered into a project agreement with the Kentucky Laborers' District Council, for and on behalf of its affiliated Local Union 1214. [R. 1-1]. This agreement established the terms and conditions through which the Union would staff Thalle's construction work for an Army Corps of Engineers project known as the Kentucky Lock Addition Downstream Locks Monolith. [*Id.* at 5; R. 13 at 1]. The agreement requires Thalle to contribute to the Welfare Fund and to the Pension Fund. [*Id.* at 21–22].

According to the complaint, the Kentucky Lock Addition project is federally funded and subject to the Davis-Bacon Act, codified at 40 U.S.C. § 3141, *et seq.* [R. 1 at 3]. The Davis-Bacon Act requires subject contractors to pay the "prevailing wage" to laborers, defined in 40

U.S.C. § 3141(2). The Secretary of Labor determines the prevailing wages for "corresponding classes of laborers and mechanics employed on similar projects in the area in which the work is to be performed." 15A Fed. Proc., L. Ed. § 39:218 (2026) (citing 40 U.S.C. § 3142(b)). The purpose of the statute is to "protect employees of federal contractors from substandard earnings by fixing a floor for wages to be paid on federal government projects." *Id.* (citing *Frank Bros., Inc. v. Wisconsin Dept. of Transp.*, 409 F.3d 880 (7th Cir. 2005))

These wage determinations change periodically. And this, at bottom, is the heart of the present dispute. The complaint alleges that the project agreement included language intending to capture modifications to the prevailing wage rate. [R. 1 at 3]. Plaintiffs point first to Article 15, which reads in relevant part:

> Wage and fringe benefit contribution rates are set forth in Appendices 1 through 5. The package of wages and benefits set forth in this Agreement equals or exceeds the Prevailing Wage and Supplement under applicable Prevailing Wage law. All wage rates and the total package of fund contributions will be based on the guidelines set forth in appendices 1 through 4.

[R. 1-1 at 12]. Plaintiffs then cite to Article 17, titled the "Savings Clause," stating that,

> It is the intent of the parties hereto to comply with all applicable provisions of State and Federal Laws. In the event that any State or Federal Statute or Regulation shall supersede, invalidate or be in conflict with any clause of this Agreement, such Statute or Regulation shall prevail over any such clause, however, the other provisions of this Agreement shall be valid and remain in full force and effect.

[*Id.* at 13]. The complaint states that the parties entered into the project agreement on March 1, 2022, and that the Department of Labor modified the prevailing wages for the relevant region as of July 1, 2025, while the project was ongoing. [R. 1 at 2–3].

Thalle, however, remitted contributions to the plaintiff funds at rates that predated the July 1, 2025, modification of the prevailing wage determination. [*Id.* at 4]. According to the

Plaintiffs, this resulted in a claimed underpayment of $30,080.17. [*Id.* at 4]. Citing the penalties contained in the project agreement, the Plaintiffs now argue that Thalle is liable for liquidated damages and interest. [*Id.* at 7; *see also* R. 1-1 at 21].

In Count 2, the Plaintiffs state that the Board of Trustees of the Pension Fund adopted a Funding Rehabilitation Plan. [R. 1 at 9]. According to the complaint, all employers who contributed to the Pension Fund are bound by the Funding Rehabilitation Plan's "Preferred Schedule," which increases the hourly rate by which contributions are measured by 8.5 percent annually. [*Id.*] Plaintiffs allege that effective July 1, 2025, the required hourly contribution rate for work on the Kentucky Lock project under the Pension Fund became $10.51 under the preferred schedule. [*Id.*] Instead of paying at that rate, Thalle continued contributing at the old rate of $9.68, resulting in an underpayment of $23,117.99. [*Id.*] Citing the penalties contained in the Funding Rehabilitation Plan, Plaintiffs contend that Thalle is liable for liquidated damages, interest, attorney fees, and costs. [*Id.* at 9–11].

Plaintiffs filed their complaint in federal court on September 11, 2025. After the Court granted two extensions of time to file a responsive pleading, Thalle timely filed the instant motion to dismiss on November 7, 2025. Thalle makes three arguments in favor of their position. First, they argue that the complaint fails to state a claim for relief because the project agreement encapsulated the complete and exclusive benefit wage terms, irrespective of the change to the prevailing wage rate in July 2025. [R. 13 at 9–13]. Second, and in the alternative, Thalle contends that the Court should refer the Davis-Bacon Act claims to the Department of Labor. [*Id.* at 13–17]. Third, Thalle asserts that the claims are premature because the Funds failed to exhaust their administrative remedies.

Plaintiffs timely filed a response in opposition to the motion on January 9, 2026. [R. 20]. Thalle filed their reply brief on February 6, 2026, in accordance with an earlier agreed order allowing them additional time to file their reply. [R. 21]. The matter is now fully briefed and ripe for adjudication.

## II

A plaintiff survives a motion to dismiss under Rule 12(b)(6) when their complaint contains sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of the cause of action will not do." *Id.*

In reviewing a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and draw "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court accepts all well-pleaded factual allegations in the complaint as true. *Eastep v. City of Nashville, Tenn.,* 156 F.4th 819 (6th Cir. 2025). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

The Court first addresses Thalle's argument that the complaint fails to state a claim for relief. Second, the Court will address Thalle's position that the Davis-Bacon Act claims must be referred to the Department of Labor. Finally, the Court will address Thalle's argument that plaintiff failed to exhaust administrative remedies.

**A**

The Plaintiff funds argue in the complaint that the revised wage determinations materially affected the project agreement, requiring Thalle to contribute to the plaintiff Funds at those new, higher rates. Thalle retorts that the project agreement is an integrated, project-specific agreement with an express cap. [R. 13 at 6]. Thalle points to language in Article 15 which states in part that "[i]n no event shall a Contractor be obligated to pay more than [the] total package of wages and fringe benefit fund contributions set forth in this Agreement." [R. 1-1 at 12]. On Thalle's reading, revised wage determinations do not modify the March 2022 project agreement terms in any way. [R. 13 at 5–6]. Thalle points to 29 C.F.R. § 1.6(c)(2)(iii), which provides that a revised wage determination issued after a contract award does not affect that project, with some exceptions. [*Id.* at 2, 10]. They note that the project agreement reflects this reality, as it is the complete and exclusive statement of the parties' terms and that no external wage determinations or post-award modifications alter the terms of the agreement. [*Id.* at 12–13].

The plaintiff Funds respond that the project agreement incorporates and anticipates updates to the prevailing wage determination in several places. Article 15 states that the package "equals or exceeds the Prevailing Wage and Supplement under applicable Prevailing Wage law." [R. 1-1 at 12]. Article 17 provides that "[i]n the event that any State or Federal Statute or Regulation shall supersede, invalidate or be in conflict with any clause of this Agreement, such Statute or Regulation shall prevail." [*Id.* at 13]. Other language in the agreement anticipates

modifications to the prevailing wage, such as Article 23's expiration provision, which reads that "[i]n the event that such a local, regional, or other applicable labor agreement does expire and the parties to that agreement have failed to reach agreement on a new contract, work will continue on the Project under terms and conditions set forth in this Agreement and as required by applicable prevailing wage law." [*Id.* at 15].

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, "requires employers to contribute to employee benefit funds in line with the terms of a contract." *Operating Engineers' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617, 618 (6th Cir. 2022). "When an employer breaches those terms, ERISA offers the jilted fund a federal vehicle for its breach-of-contract claim" which "comes within the exclusive jurisdiction of the federal district court." *Id.* Section 515 of ERISA requires employers to "make contributions in accordance with the terms and conditions of the plan or agreement," and a failure to make such promised contributions often constitutes a breach of the agreement. *Id.* at 619 (citing 29 U.S.C. § 1145). When an employer violates some claimed provision of a live contract, "ERISA gives funds a claim for delinquent contributions in federal district court." *Id.* at 620. The holding *Rieth-Riley* clearly stands for the proposition that district courts have the jurisdiction to hear breach of contract claims brought under § 515 of ERISA. *Id.* at 623.

Courts interpret contracts such as this project agreement through "ordinary contract principles to the extent those principles are not inconsistent with federal labor policy." *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 562 (6th Cir. 2015). "Where a contract is in writing and its terms are clear and unambiguous, [courts] ascertain the contract's meaning in accordance with the contract's plainly expressed intent." *Id.* For the plaintiff Funds to prove a breach of contract, they must establish three things: (1) existence of a contract; (2) breach of that contract; and (3)

6

damages flowing from that breach. *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). The interpretation of a contract is a question of law. *Neely v. Miller Brewing Co., Inc.*, 25 F. App'x 370, 372 (6th Cir. 2002). An ambiguity exists in contract law where "there is more than one reasonable construction of contractual language," but a contract is not ambiguous "simply because the parties disagree on its meaning." *GPH Louisville Hill Creek LLC v. Redwood Holdings, LLC*, No. 3:21-CV-63-RGJ, 2022 WL 855292, at *4 (W.D. Ky. Mar. 22, 2022) (citation modified). The dismissal of a breach of contract claim under Rule 12(b)(6) is appropriate only if Thalle's interpretation of the contract is the only reasonable construction as a matter of law. *Id.*

Neither party disputes whether the project agreement remains in effect. Instead, the parties dispute whether a subsequent modification to the prevailing wage rate affects the terms of the project agreement. The plain text of the project agreement is not clear on this point. Start first with the full text of Article 15, which both parties point to in support of their respective interpretations:

> Wage and fringe benefit contribution rates are set forth in Appendices 1 through 5. The package of wages and benefits set forth in this Agreement *equals or exceeds the Prevailing Wage and Supplement under applicable Prevailing Wage law*. All wage rates and the total package of fund contributions will be based on the guidelines set forth in appendices 1 through 4.
>
> Upon 30 days notice to any Contractor by the Union and the fund trustees, fund contributions may be reallocated among the various funds provided such reallocation does not violate applicable Prevailing Wage Law. *In no event shall a Contractor be obligated to pay more than total package of wages and fringe benefit fund contributions set forth in this Agreement.*
>
> If, by operation of the Pension Protection Act, the Pension Plan requires additional fund contributions which cannot be met entirely through reallocation of other fund contributions, Contractors shall be entitled to other offsets, adjustments, or credits to make up the

7

> shortfall so that the required increased contributions are at no extra cost to the Contractors.
>
> If benefits are terminated notwithstanding Contractors' timely payment of contributions at rates provided for in this Agreement, the Contractor may cease contributing to the terminated benefit fund and shall allocate such payments to wages as required by the Prevailing Wage Law.

[R. 1-1 at 12] (emphasis added). Article 15 states that the  contribution package "equals or exceeds" the prevailing wage according to prevailing wage law, a dynamic figure subject to change by the Department of Labor. But the same Article states that "in no event shall a Contractor be obligated to pay more than total package of wages and fringe benefit fund contributions set forth in this Agreement." [*Id.*]

Article 17, the project agreement's "savings clause," contains the following two provisions:

> It is the intent of the parties hereto to comply with all applicable provisions of State and Federal Laws.
>
> In the event that any State or Federal Statute or Regulation shall supersede, invalidate or be in conflict with any clause of this Agreement, such Statute or Regulation shall prevail over any such clause, however, the other provisions of this Agreement shall be valid and remain in full force and effect.

[*Id.* at 13]. Article 17 operates as a federal-law supremacy provision: conflicting federal statutes or regulations "shall prevail." Because the Davis-Bacon Act requires contractors on federally funded projects to pay the prevailing wage, 40 U.S.C. § 3142(a), this clause could plausibly require compliance with a subsequently issued prevailing wage determination. This is a reasonable competing construction of the project agreement advanced by the plaintiff Funds. [R. 1 at 3].

8

Thalle argues, not unconvincingly, that the federal regulations clearly state that wage determination revisions issued after parties enter into a contract have no effect on the agreement. [R. 13 at 10] (citing 29 C.F.R. § 1.6(c)(2)(iii)). But at the Rule 12(b)(6) stage is that the Court must view as true all of the plaintiff Funds' well-plead facts and draw all reasonable inferences in their favor. The Funds raise the reasonable inference that the project agreement included language incorporating future modifications of the prevailing wage rates to apply to the project agreement. Because Thalle's interpretation of the contract is not the only reasonable construction as a matter of law, any dismissal of the breach of contract claims is inappropriate at this time. *GPH Louisville Hill Creek LLC*, 2022 WL 855292, at *4.

**B**

Next, Thalle invites the Court to refer this dispute to the Department of Labor. [R. 13 at 13–17]. In support of this argument, Thalle argues in the alternative that this is an attempt to enforce a private right of action under the Davis-Bacon Act, which courts do not permit, and that this Court should defer to the Department under the doctrine of primary jurisdiction. [R. 13 at 13–17]. The Funds respond that they are not attempting a private right of action under the Davis-Bacon Act and that Thalle deliberately mischaracterizes two straightforward breach of contract claims. [R. 20 at 9–10].

As an initial matter, the Court is not convinced that Plaintiffs are pursuing a "private right of action" under the Davis-Bacon Act, as Thalle insinuates. Their two-count complaint clearly sounds in principles of basic contract law. Indeed, one can read the complaint without needing to reference the Davis-Bacon Act at all. This is a dispute about the project agreement's obligations, and the Court at this time declines to follow Thalle's reading of the complaint.

Thalle's argument in favor of referring the matter to the Department of Labor under the doctrine of primary jurisdiction argument, however, warrants closer examination. Thalle argues that the Court should defer to the Department of Labor under the doctrine of primary jurisdiction. [R. 13 at 15]. The Supreme Court defined this canon in 1956:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. . . . "Primary jurisdiction" . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). Courts in the Sixth Circuit recognize that "no fixed formula exists for applying the doctrine of primary jurisdiction" that that courts apply this jurisdictional test on a "case-by-case basis." *Smith v. Grange Mut. Cas. Co.*, No. 08-128-DLB, 2010 U.S. Dist. LEXIS 155754, at *5 (E.D. Ky. Mar. 29, 2010).

While the Sixth Circuit has not adopted a "fixed formula" for analyzing primary jurisdiction questions, other circuits have. Courts in the Third, Fourth, and Second Circuits employ a four-part test, asking:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Raritan Baykeeper v. NL Indus.*, 660 F.3d 686, 691 (3d Cir. 2011); *see also AT&T Communs., Inc. v. Bell Atl.-Virginia, Inc.*, 35 F. Supp. 2d 493, 498 (E.D. Va. 1999) (citing *Nat'l*

10

*Commcations Ass'n v. Am. Telephone & Telegraph Co.*, 46 F.3d 220, 223 (2d Cir. 1995)). The

Fifth Circuit employs a three-part test, with judges weighing:

> Whether (1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

*Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995).

The First Circuit employs a different three-part test, asking "(1) whether the agency

determination lay at the heart of the task assigned the agency by Congress; (2) whether agency

expertise was required to unravel intricate, technical facts; and (3) whether, though perhaps not

determinative, the agency determination would materially aid the court." *Mashpee Tribe v. New

Seabury Corp.*, 592 F.2d 575, 580 (1st Cir. 1979). With some slight variations, the tests ask a

series of similar related questions. Recognizing the wisdom in these approaches, and without a

guiding test from the Sixth Circuit, the Court will analyze Thalle's argument with an eye toward

the tests employed by other circuits.

In support of its argument, Thalle points to a case from the Eastern District of

Pennsylvania for the claimed proposition that the Department of Labor is the proper body to

consider whether a post-award wage determination applies to a given contract. In *United States

ex rel. IBEW, Local Union No. 98 v. Farfield Co.*, No. 09-4230, 2017 U.S. Dist. LEXIS 157270,

at *1 (E.D. Pa. Sep. 26, 2017), the plaintiff Union alleged that the defendant contractor

deliberately and intentionally misclassified workers at classifications with a lower rate of pay on

prevailing wage jobs in violation of the Davis-Bacon Act. According to the Union, this allowed

the defendant contractor to gain a bidding advantage over its competitors by manipulating the

rates at which it paid employees. *Id.* at *2. The Defendant filed a motion to dismiss, arguing that

11

the court lacked subject matter jurisdiction because the Department of Labor enjoyed exclusive jurisdiction over prevailing wage rate classification disputes. *Id.* at *6. The Union argued that the court had jurisdiction because the legal question was not complex and did not involve a challenge to the wage determination, but rather to the defendant's conduct. *Id.* at *7. The Court initially denied the defendant's motion, finding that the classifications at issue were not complex. *Id.* at *7–8.

The parties then proceeded to the discovery period, where the plaintiff Union wished to offer three electrical trade industry experts at trial. *Id.* at *8. The defendant opposed this request and again argued that "if the classifications at issue are so complex as to require expert testimony, then [the] Court lacks jurisdiction and the matter should be dismissed and referred to the DOL." *Id.* at *9. The district court agreed with the defendant, noting that "complex classifications" of prevailing wages for employees "necessitate[d] deference to the DOL." *Id.* at *14. The court, applying the Third Circuit's four-part test, reversed its prior decision in light of the plaintiff's request for expert testimony. *Id.* at *15.

Significant differences exist between *Local Union No. 98* and the facts of this case. The dispute in *Local Union No. 98* involved a dispute over "worker classifications and wage determinations" which are "technical policy considerations in the DOL's field of expertise." *Id.* The parties in this case, by contrast, do not dispute whether certain classifications apply to certain workers. The parties ask a simpler question: Does the project agreement require Thalle to make higher contributions to the Funds when the prevailing wage rates change, as they did in July 2025? The parties do not dispute that the Department of Labor modified the prevailing wage rates at that time. There is no dispute over whether certain individual workers should be classified at different occupation categories. The only dispute is whether the project agreement

12

requires Thalle to contribute at 2022 levels, when they first entered the agreement with the Funds, or at the modified 2025 levels. The Funds ask the Court to find that Thalle breached a specific contract between the parties, not that it violated the NLRA, the Davis-Bacon Act, or any other regulatory scheme. *Rieth-Riley Constr. Co.*, 43 F.4th at 623.

The application of the factor test used by the Third, Fourth, and Second Circuits also counsels against dismissing the complaint. The first factor asks "whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise." *Raritan Baykeeper*, 660 F.3d at 691. A breach of contract claim is a question within the conventional experience of judges. *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001) (district court resolving a breach of contract claim entails "little risk" of interfering with uniform national labor policy). At the second factor, courts consider "whether the question at issue is particularly within the agency's discretion." *Raritan Baykeeper*, 660 F.3d at 691. The Department of Labor may set the prevailing wage rates, but Section 515 of ERISA "offers a federal vehicle for [such] contract claims." *Rieth-Riley*, 43 F.4th at 619.

The third factor asks whether there exists a substantial danger of inconsistent rulings. *Raritan Baykeeper*, 660 F.3d at 691. There is minimal risk of this court issuing rulings inconsistent with the Department of Labor as to this contractual dispute. As Thalle itself argues, the Department of Labor has not spoken to the breach of contract claim between the plaintiff Funds and Thalle, even as the Union associated with the funds have brought varied actions elsewhere. [R. 13 at 16; *see also* R. 23]. But the Union and the Funds are distinct, albeit related, legal entities. The Funds bring this action under Section 515, the section of ERISA permitting benefit plans to sue for delinquent contributions. *Rieth-Riley*, 43 F.4th at 619. And where the

13

duty to contribute to an employee benefit fund "stems from a live contract, ERISA gives funds a claim for delinquent contributions in federal district court." *Id.* at 620.

The final factor asks whether prior application to the agency has been made. *Raritan Baykeeper*, 660 F.3d at 691. As in the third factor, the Court is aware that the *Union* brought varied actions, but the plaintiff *Funds* have not brought actions in other forums. [R. 20 at 11]. Having reviewed these factors, this breach of contract dispute is not the type of action where referral to the Department would be appropriate. Where the breach of contract claim involves the interpretation of the project agreement's terms, and not the interpretation of wage classifications or determinations, the Court declines to refer the matter to the Department of Labor.

## C

Finally, Thalle argues that the Funds' claims are premature because they failed to exhaust their administrative remedies before filing suit. [R. 13 at 17–20]. The Funds dispute that a plaintiff petitioning a court for a breach of contract under Section 515 of ERISA has any requirement to exhaust administrative remedies. [R. 20 at 10–12]. Thalle did not buttress its exhaustion argument on reply.

Thalle suggests that a claimant must exhaust administrative remedies before filing a claim for benefits under ERISA plans, citing to *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–55 (6th Cir. 1991), and *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 563 (6th Cir. 2017). [R. 13 at 17]. Neither case involved a breach of contract claim under the auspices of Section 515, but rather involved individual plan participants seeking review of their respective benefits denials. Thalle listed a series of other citations standing, they argue, for the proposition that a breach of contract claim based on a prevailing wage determination would be considered premature if plaintiffs failed to exhaust administrative remedies. [R. 13 at 17–20].

Yet none of these cases address the unique intricacies of a § 515 action brought by a fund, rather than an individual beneficiary. Congress enacted § 515 and § 502(g)(2) of ERISA in response to the recurring problem of employers failing to make "promised contributions on a regular and timely basis." *Laborers Health & Welfare Tr. Fund for N. California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 546 (1988). "The liability created by § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502," which the Supreme Court describes as a "special remedy." *Id.* at 547. This supports the Sixth Circuit's reasoning that where an "employer stops contributing to an employee benefit fund," ERISA "gives funds a claim for delinquent contributions in federal court" if "the duty stems from a live contract." *Rieth-Riley*, 43 F.4th at 620. Where a "plaintiff asserts an ERISA cause of action—and doesn't ask a federal court to find an employer violated the NLRA—the court has jurisdiction to hear the case." *Id.* at 622–23.

This necessarily informs whether courts require a plaintiff fund to exhaust remedies before seeking judicial redress of a breach of contract claim under § 515. The Sixth Circuit "requires a *participant* to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) (emphasis added); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998) (exhaustion requirement applies to participants and beneficiaries bringing suit under ERISA §§ 502(a)(1)(B) and 502(a)(2)). The Sixth Circuit acknowledges an exception to the exhaustion requirement where an individual participant's "resorting to the *plan's* administrative procedure would simply be futile or the remedy inadequate." *Fallick*, 162 F.3d at 418 n.4 (emphasis added). The exhaustion requirement applies plainly to civil actions brought by *participants or beneficiaries*, not to civil actions brought by the funds or plans themselves. Indeed, it would be

15

nonsensical for a plan to resort to its own internal dispute procedures in the way that courts require a beneficiary to do.

It is notable that nowhere in Thalle's argument can it point out what administrative remedies the Funds would need to exhaust before resorting to legal action, other than restating their belief that the court should defer to the Department of Labor. [R. 13 at 19 ("In the prevailing wage context, Congress has expressly delegated . . . the exclusive authority to determine classifications, rates, and applicability of wage determinations under the Davis-Bacon Act")]. The Court earlier determined that the doctrine of primary jurisdiction does not apply. Thalle points to no relevant caselaw directing the undersigned to a comparable case in which a federal court ordered a plaintiff fund to exhaust administrative remedies before filing a breach of contract claim. For these reasons, Thalle's exhaustion argument is unavailing.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Thalle Construction's Motion to Dismiss **[R. 13]** is **DENIED** .

2. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Thalle shall file their responsive pleading within fourteen (14) days of the filing of this Memorandum Opinion and Order.

This 7th day of July, 2026.



Gregory F. Van Tatenhove
United States District Judge

16